Chancellor J ames
afterwards delivered the decree of the court:
In considering this case the court do not deem it ne* cessary to enter into the extensive grounds occupied by the learned counsel on both sides. We are of opinion that the original trust deeds will fully shew what was the intention of the parties to the same, and that after finding out that intention, nothing more is necessary than to compare the second deed from the defendant William Brazier, to Thomas Frost and Philip Mathews, with the original deeds, in order to discover whether it be repugnant or consistent with the same. The grounds taken by tbe court will therefore be two fold.
1st. To consider the intention of the parties to the original deeds.
2d. To examine whether the deed from William Brazier to Thomas Frost and Philip Mathews be consistent with that intention.
And 1st. The deed from John Gordon, and that from William Harnett to the trustees, appear to be for like considerations, and much in the same words; therefore to shorten this decree, they may well be considered, as to construction, in the same point of view. From these it appears that the intention of the ox-iginal parties was to associate themselves together for the worship of God, and to hear the truths of the gospel expounded; but nevertheless with this express reservation throughout, that they were to hear these truths expounded agreeably to the doctrines of their own sect.
Now it is not material that there are but slight shades of difference between the • different sects of protestant *447 christians; it is enough for us to know that such differ-enees do exist; and perhaps for wise purposes, since they would all become supine, were they ail of the same persuasion. But to forward these views of the parties to , . . - . . . ... • , i the original deeds, it was also their intention that lots should be purchased for a church and a parsonage; and that buildings should be erected on the same.
And it is very material here to observe that the original parties to the deeds, were not actuated in their views by pecuniary considerations; since the consideration money expressed on the face of both the deeds, is only five shillings ; and the trustees or a majority of them were to raise a sum of money not exceeding five hundred pounds sterling for the purpose of erecting buildings on the said lots. ’They were to raise a sum of money, in what way? By contribution among themselves, and by donations from abroad, which was all very fair, for they had no funds from which they could otherwise draw. Then they were to spend, not to make money by entering into these engagements.
The consideration of the original deeds, and of the views of the original parties to the same, not being of a pecuniary nature, we will next inquire whether it could ever be intended by them, that William Brazier was to make his appointment for pecuniary considerations ? On this point the deeds are silent, and what is to be collected from them is by implication and general usage in similar cases. The words of the second deed are, that he, (Wm. Brazier,) shall from time to time appoint during his natural life. And from these words, it is strongly urged that he may appoint in any manner that he pleases, either for mo-' ney or not. But if the original grantors, and the members of the church were not, as we have seen, actuated by pecuniary considerations, can it be reasonably supposed that they ever intended that their minister should be so actuated ? They were not themselves stimulated by the love of money! How then could they have it in contemplation that their clergyman, that reverend expounder of *448 God’s holy word, who was to lead them in the way to salvation, that he should be actuated by the love of money? The thing is absurd.
Let us next examine whether the deed from William _ Brazier to Thos. Frost and Philip Mathews has, notwithstanding, been made for a pecuniary consideration ? After reciting the original deed from John Goidon, the latter deed goes on as follows, “ that he, the said William Brazier, named in the aforesaid deed, being unable from indisposition to perform and execute the trusts reposed in him by the same, and also for good and pious causes and considerations, him thereunto moving,” &c.
Now the only consideration expressed in this deed is, one similar to what is expressed in the other deeds, viz. for certain pious considerations. But in looking- over the answer of Wm. Brazier, we find that all the considerations were not expressed in the deed. He has there admitted that he received five hundred dollars in hand, and that three thousand dollars more were secured by the joint* bond of the late Mr. Frost and the said Mr. Mathews ; a sum he says by no means too large for the use and benefit of the parsonage house, as he could have leased the same for fifty pounds a year. Then the ostensible reasbn which is given for receiving a pecuniary consideration is for the use of the parsonage house. This parsonage house he says would rent for 50/. a year. Now seven years is considered in law as the length of a life ; therefore in'seven years this rent of the parsonage house would only amount to 350/.; but he received $3,500, which is a sum nearly three times as great as the rent of the house would amount to upon his own shewing.
Then there can hardly remain a doubt but that there was a pecuniary consideration kept out of view in the -deed, and which was to be given for the' sale of the church. Besides Wm. Brazier had only the use of these lands while the legal estate remained in the trustees, and he could not properly dispose of them without their consent.
We also apprehend that the exertions he speaks of, were. *449 made, and the assistance given, upon the expectation of his being repaid by the congregation, and. not out of the • ■
. . We think it now sufficiently appears, that the second deed frota William Brazier to Thomas Frost and Philip Mathews, was made for a pecuniary consideration ; and we have seen before that the original parties to the trust deeds were not actuated by pecuniary motives : therefore we conclude that the second trust deed is inconsistent with the original trust deeds. But there is still another consideration upon which this deed must fail. After those clauses in the original deeds- containing the powers to Wm. Ha-rnett and Wm. Brazier, during their lives respectively, to preach, &c. there is a proviso, as follows — “ Provided always that the said persons shall not preach any other doctrine than is contained in the late reverend John Wesley’s hotes upon the new testament, and four volumes of his sermons, as essential to salvation.”
Now it appears plainly that the words, “ the said persons shall not preach, &c.” refer not to Wm. Harnett .and Wm. Brazier alone^ but also to every person which either bf them might appoint to preach, so that the person appointed was liot to preach any other doctrines than those specified in the proviso.
But says Philip Mathews, I conformed to'that proviso,,' for I preached some of those very sermons. This is mere evasion. We find that he had before that time joined the Episcopalians, and sat with them in convention. . How then could the Methodists any longer consider him as of their persuasion, or receive him as their minister ? For we know that none of the sects of Christians will borrow their clergy from another sect. Besides the Rev. Mr. Frost was united with Mr. .Mathews in this appointment, and they proceeded, to dedicate the church which was not in.conformity to the rules of the Methodists. They also read'all the prayers of the Episcopal Church^ and not those selected by Mr. Wesley, which was also contrary to rule. ■These .were indeed small deviations, 'but small as they are, *450 they shew the intention to convert the church into an Epis-» copal one, contrary to the proviso : and smaller matters bh.an these, when connected with religion, have caused discord and bloodshed in the world. But we have it in evidence that Mr. Frost preached ip the church. He was, we are informed and know, avowedly and zealously, an Episcopalian. Then is it for a moment to be supposed that he would preach the doctrines of Mr. Wesley ? That is very improbable indeed.
Upon the whole of the circumstances of this case, we are therefore of opinion that the intentions of the parties to the original deeds were not pecuniary — that they could never have intended that Wm. Brazier should make his appointment from pecuniary motives : that nevertheless it appears he has done so ; and also that the persons so appointed by him have broken the proviso contained in the original deed. The second deed therefore from William Brazier to Thomas Frost and Philip Mathews is void.
Wherefore it is ordered and decreed, that this second deed be delivered up to be cancelled, and that the defendants do pay the costs of this suit. But as it has been urged by the defendants that certain sums of money are bona fide due to them from the congregation, let it be referred to the master to settle" all accounts between them.*

 The ground on which the court appears to have decreed, seems to have been that here was'a power coupled with a trust, and thatthe appointment of a minister of the gospel who did not bona fide answer the description intended in the deed, and for money for the benefit of the person entrusted with the nomination, was not such an execu. lion of the power as could be supported. Therefore the deed of appointment and conveyance was void.